KYLE J. KAISER (13924)
Assistant Utah Attorney General
SEAN D. REYES (7969)
Utah Attorney General
Attorneys for State Defendants
160 East 300 South, Sixth Floor
P.O. Box 140856
Salt Lake City, Utah 84114-0856
Telephone: (801) 366-0100
Facsimile: (801) 366-0101
E-mail:  kkaiser@utah.gov
*Attorneys for the Corrections Defendants*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| REGINALD WILLIAMS,<br><br>            Plaintiff,<br>v.<br><br>ZIONS FIRST NAT'L BANK et al.,<br><br>            Defendants. | **STATE DEFENDANTS' MOTION TO DISMISS AND MEMORANDUM IN SUPPORT**<br><br>Case No.  2:13-CV-319-DN<br><br>District Judge David Nuffer |

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ iii

MOTION.................................................................................................................................. vii

MEMORANDUM ................................................................................................................... vii

INTRODUCTION .................................................................................................................. vii

FACTUAL BACKGROUND ............................................................................................... viii

LEGAL STANDARD............................................................................................................. ix

LEGAL ARGUMENT ............................................................................................................ 11

   I.   Williams' Due Process Count Fails to State a Claim. ...................................... 11

     A.   The Due Process Claim Is Barred by the Statute of Limitations................................ 2

     B.   Williams Has No Property Right in an Interest-Bearing Inmate Account. ................. 4

     C.   The Prison Officials Are Entitled to Qualified Immunity. ........................................... 7

   II.   Williams' Takings Count Fails to State a Claim............................................... 9

     A.   No Private Property Has Been Taken.......................................................................... 9

     B.   No Property Has Been Taken "For a Public Purpose." ............................................. 10

   III.   Williams' Antitrust Count Fails to State a Claim. ......................................... 10

     A.   The Antitrust Claim Is Barred by the Statute of Limitations. ................................... 11

     B.   Williams Does Not State an Antitrust Injury............................................................. 11

     C.   The State, and Its Officials, Are Immune from Antitrust Liability. ........................... 14

     D.   State Law Provides No Remedy. ............................................................................... 15

   IV.   Williams' Retaliation Count Fails to State a Claim. ...................................... 16

CONCLUSION....................................................................................................................... 18

# TABLE OF AUTHORITIES

**Cases**

*AmeriSource Corp. v. United States*, 525 F.3d 1149 (Fed. Cir. 2008) ........................................ 10

*Anderson v. Creighton*, 483 U.S. 635 (1987) .......................................................................... x, xi

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................................... ix, x

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519
   (1983) ................................................................................................................................. 12

*Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328 (1990) .................................................. 12

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ......................................................................... x

*Bennis v. Michigan*, 516 U.S. 442 (1996) ................................................................................... 10

*Board of Regents v. Roth*, 408 U.S. 564 (1972) ............................................................................ 4

*Boisjoly v. Morton Thiokol, Inc.*, 706 F. Supp. 795 (D. Utah 1988) ............................................ 15

*Brock v. Herbert*, No. 10-4148, 2011 WL 3154230 (10th Cir. July 21, 2011) .............................. 3

*Charley's Taxi Radio Dispatch Corp. v. SIDA of Hawaii, Inc.*, 810 F.2d 869 (9th Cir. 1987).... 14

*City of Wichita, Kan. v. U.S. Gypsum Co*, 72 F.3d 1491 (10th Cir. 1996) .................................... x

*Clark v. Wilson*, 625 F.3d 686 (10th Cir. 2010) ....................................................................... 8, 9

*Dickeson v. Quarberg*, 844 F.2d 1435 (10th Cir. 1988) ............................................................... 4

*DSI Corp. v. United States*, 655 F.2d 1072 (Ct. Cl. 1981) ............................................................ 9

*Elliott Indus. L.P. v. BP Am. Prod. Co.*, 407 F.3d 1091 (10th Cir. 2005) ................................... 12

*Farthing v. City of Shawnee*, 39 F.3d 1131 (10th Cir. 1994) ........................................................ 4

*Fratus v. DeLand*, 49 F.3d 673 (10th Cir.1995) .......................................................................... 2

*Gee v. Pacheco*, 627 F.3d 1178 (10th Cir. 2010) ......................................................................... x

*Greene v. Barrett*, 174 F.3d 1136 (10th Cir. 1999) .................................................................. 7, 8

*Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 1991) ........................................................................ x

*Hall v. Witteman*, 584 F.3d 859 (10th Cir. 2009) .................................................................... ix, x

*Hoover v. Ronwin*, 466 U.S. 558 (1984) .................................................................................... 14

*Howards v. McLaughlin*, 634 F.3d 1131 (10th Cir. 2011) .......................................................... 16

*Hunt v. Bennett*, 17 F.3d 1263 (10th Cir. 1994) .......................................................................... 3

*Hyde Park Co. v. Santa Fe City Council*, 226 F.3d 1207 (10th Cir. 2000) .................................... 4

*Kaw Valley Elec. Coop. Co. v. Kan. Elec. Power Coop.*, 872 F.2d 931 (10th Cir. 1989)............ 11

*Keith v. Koerner*, 707 F.3d 1185 (10th Cir. 2013)........................................................ 16

*Leverington v. City of Colo. Springs*, 643 F.3d 719 (10th Cir. 2011)........................................ ix, x

*Lewis v. Casey*, 518 U.S. 343 (1996) .............................................................................. 17

*Lewis v. Jacks*, 486 F.3d 1025 (8th Cir. 2007) ................................................................ 17

*Loard v. Sorenson,* No. 13-4141, 2014 WL 1364678 (10th Cir. Apr. 8, 2014)............................ 3

*Mathews v. Eldridge*, 424 U.S. 319 (1976).................................................................. 4

*Mercer-Smith v. N.M. Children, Youth & Fam. Dep't*, No. 10-2053, 2011 WL 971132 (10th Cir. 2011) ...................................................................................................... 3

*Miller v. Weaver,* 2003 UT 12 .................................................................................... 13

*Mitchell v. Forsyth*, 472 U.S. 511 (1985) .................................................................... x

*Mondragon v. Thompson*, 519 F.3d 1078 (10th Cir. 2008) ........................................... 2

*Monell v. Department of Social Services of the City of New York,* 436 U.S. 658 (1978)............... 9

*Nielander v. Bd. of Cnty. Comm'rs*, 582 F.3d 1155 (10th Cir.2009)........................................ 16

*Parker v. Brown*, 317 U.S. 341 (1943) ...................................................................... 14

*Pearson v. Callahan*, 555 U.S. 223 (2009)................................................................ x, xi

*Pennsylvania Central Transp. Co. v. City of New York,* 438 U.S. 104 (1978)............................ 9

*Peterson v. Shanks*, 149 F.3d 1140 (10th Cir. 1998) .................................................... 17

*Petrick v . Fields*, No. 96-6076, 1996 WL 699706 (10th Cir. Dec. 6, 1996) .......................... 5

*Reazin v. Blue Cross & Blue Shield of Kan., Inc.*, 899 F.2d 951 (10th Cir.1990)...................... 12

*Ruckelshaus v. Monsanto Co.,* 467 U.S. 986 (1984) ................................................... 9

*Ruiz v. McDonnell*, 299 F.3d 1173 (10th Cir. 2002)..................................................... xi

*Sandin v. Connor*, 515 U.S. 472 ............................................................................... 8

*Saucier v. Katz*, 533 U.S. 194 (2001) ......................................................................... xi

*Skip Kirchdorfer, Inc. v. United States*, 6 F.3d 1573 (Fed. Cir. 1993) ................................. 9

*Smith v. Maschner*, 899 F.2d 940 (10th Cir. 1990)..................................................... 16

*Strope v. McKune*, No. 09-3283, 2010 WL 2332079 (10th Cir. Jun. 11, 2010)........................ 17

*Tal v. Hogan*, 453 F.3d 1244 (10th Cir. 2006) ............................................................ 12

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308.............................................. x

*Tellis v. Godinez*, 5 F.3d 1314 (9th Cir. 1993) ............................................................................ 7

*TV Comm'ns Network v. Turner Network Television, Inc.*, 964 F.2d 1022 (10th Cir. 1992)....... 12

*Wallace v. Kato*, 549 U.S. 384 (2007) ...................................................................................... 2

*Western Plains Serv. Corp. v. Ponderosa Dev. Corp.*, 769 F.2d 654 (10th Cir. 1985) ................. 6

*Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989).......................................................... xi

*Zenith Radio Corp. v. Hazeltine Research, Inc.* 401 U.S. 321 (1971)........................................ 11

**Statutes**

15 U.S.C. § 1 ...................................................................................................................... 11

15 U.S.C. § 15(a) ............................................................................................................... 12

15 U.S.C. § 15(b) ............................................................................................................... 11

42 U.S.C. § 1983.............................................................................................................. 2, 3

Nev. Rev. Stat. § 209.241 ..................................................................................................... 7

U.S. Const. amend. V........................................................................................................... 10

U.S. Const. amend. XIV, § 1 ................................................................................................. 4

Utah Code § 61-13-23 ........................................................................................................... 5

Utah Code § 63G-6-1001 (2012) .......................................................................................... 13

Utah Code § 63G-6-801 (2012) ............................................................................................ 13

Utah Code § 63G-6-804 (2012) ............................................................................................ 13

Utah Code § 63G-6-811 (2012) ............................................................................................ 13

Utah Code § 63G-6-814 (2012) ............................................................................................ 13

Utah Code § 63G-6-815 (2012) ............................................................................................ 13

Utah Code § 63G-6a-1602 (2013) ........................................................................................ 13

Utah Code § 63G-6a-1702 .................................................................................................... 13

Utah Code § 63G-6a-1802 .................................................................................................... 13

Utah Code § 63G-6a-1802(5) ............................................................................................... 13

Utah Code § 63G-6a-2305 .................................................................................................... 13

Utah Code § 63G-6a-2306 .................................................................................................... 13

Utah Code § 63G-7-201(1) ................................................................................................... 15

Utah Code § 64-13-23 ................................................................................................ 5, 6, 8, 14

Utah Code § 64-13-23(2) ................................................................................. 6

Utah Code § 75-6-101(4) ................................................................................. 6

Utah Code § 76-10-3109 (2013) ..................................................................... 15

Utah Code § 76-10-3117 (2013) ..................................................................... 15

Utah Code § 76-10-3118 (2013) ..................................................................... 15

Utah Code § 76-10-919 (2007) ....................................................................... 15

Utah Code § 76-10-926 (2007) ....................................................................... 15

Utah Code § 78B-2-306(3) ............................................................................... 2

Utah Code §63G-6-804 (2012) ....................................................................... 13

**Rules**

Fed. R. Civ. P. 10(c) ......................................................................................... x

Fed. R. Civ. P. 7 and 12 ................................................................................. vii

Fed. R. Civ. P. 12(b)(6) .................................................................................... ix

## MOTION

Pursuant to Federal Rules of Civil Procedure 7 and 12, Defendants Billie Casper, Alfred Bigelow, Larry Bussio, Pamela Sorenson, Paul Gardner, Craig Balls, Gary Sessions, Steve Turley, John Capell, Helen Shreve, Brian Allgaier, Robert Strong, Raymond Knight, Mike Haddon, Matthew Anderson ("Prison Officials") and the Utah Department of Corrections ("UDOC") (all, collectively, the "State Defendants") through their counsel Kyle J. Kaiser, Assistant Utah Attorney General, hereby move the Court to dismiss Plaintiffs' Complaint against them.

## MEMORANDUM

## INTRODUCTION

Plaintiff Reginald Williams, an inmate at the Utah State Prison, brings his multi-page, multi-count complaint against a plethora of Prison Officials, the Utah Department of Corrections, a Zions Bank, and a number of its employees.  He also attempts to raise his claim as a putative class action.[1]  The root of Williams' complaint is that he should be receiving interest on his Inmate Trust Fund Account ("IFTA" or "Trust Account").  His claims come in many shades—antitrust, takings, due process—but they all return the same result:  Williams has failed to state a claim.

He also alleges that, in awarding the IFTA contract to Zions Bank, the State Defendants violated the Utah Procurement Code.  Though the State Defendants deny any violation,

---

[1] The Court has denied his motion to certify a class, pending review by appointed counsel.  (*See* Ord. at ¶ 6 (Doc. 32).)  As such, the State Defendants will not address the merits of certification here.

compliance with the Procurement Code is not relevant to Williams's claims. He cannot bring a claim for damages under the Procurement Code, and his attempts to shoehorn his complaints into federal constitutional and antitrust law are untimely and unavailing.

Finally, Williams alleges retaliation for his pursuit of these claims. But once again, Williams does not state a plausible claim. He cannot point to an adverse action, or he cannot allege that the action would chill a prisoner of ordinary firmness from continuing, or he cannot plead sufficient facts to show a plausible nexus between the action and the protected activity.

The State Defendants are entitled to dismissal of all of Williams' claims, with prejudice.

## FACTUAL BACKGROUND

The following facts, taken from Plaintiffs' Complaint (doc. 6) form the basis of the State Defendants' Motion.[2]

1.      Plaintiff Reginald Williams is an inmate in the custody of defendant Utah Department of Corrections ("UDOC"). (Compl. at 3A.)

2.      Plaintiff has a purported interest in the Inmate Trust Fund Account ("ITFA" or "Trust Account") that is held by Defendant Zions Bank and is administered by UDOC. (Compl. at 4A–C.)

3.      Zions has held the Trust Account since approximately 1996, and has negotiated contracts for the account in 1995, 2001, and 2006. (Compl. at 4C, 4D–4F.)

4.      On or about February 19, 2011, plaintiff filed a complaint ("OCC Complaint") with the Office of Comptroller of the Currency ("OCC") alleging that Zions Bank did not

---

[2] Defendants do not agree to the truth of the facts, but accept them for the purpose of challenging the legal sufficiency of the complaint only.

properly procure the ITFA accounts, failed to pay interest on the ITFA accounts to inmates, and was committing theft by investing the interest accrued on the ITFA accounts for the benefit of Zions Bank. (Compl. at pp. 4M-4R). The OCC took no action. (*Id.*)

5.     In 2010 and 2011, Williams sought records related to these claims. Unnamed UDOC officials "seized and confiscated" some of the records. (Compl. at 4T.) Two weeks later, Williams participated in a statutorily required Offender Management Review, in which two Prison Officials gave Williams a negative parole recommendation, but also recommended that the Board of Pardons give Williams a three-year rehearing if he completed an 18-month therapy program, 17 months of which he had already completed. (Compl. at 4T.) Other Prison Officials did not immediately open a grievance on the negative parole recommendation immediately because Williams did not provide a copy of the document. (Compl. at 4U.)

6.     On April 18, 2013, plaintiff filed his Complaint in this action, and has moved the Court to certify this case as a class action.

## LEGAL STANDARD

Defendants move to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). In reviewing a 12(b)(6) motion to dismiss, the court assumes the truth of well-pleaded facts and draws reasonable inference in a light most favorable to the plaintiff. *E.g.*, *Leverington v. City of Colo. Springs*, 643 F.3d 719, 723 (10th Cir. 2011). But a claim survives only if "there is plausibility in the complaint." *Hall v. Witteman*, 584 F.3d 859, 863 (10th Cir. 2009) (citations and quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Threadbare recitals of elements, facts "merely consistent" with liability, "labels and conclusions," or "unadorned, the-defendant-unlawfully-harmed me accusation[s]" are insufficient. *Iqbal*, 556 U.S. at 678; *Leverington*, 643 F.3d at 723 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *Gee v. Pacheco*, 627 F.3d 1178, 1184–85 (10th Cir. 2010) (citations and quotations omitted); *Hall*, 584 F.3d at 863 (citations and quotations omitted).

In reviewing a motion to dismiss, the Court may rely on the facts as alleged in the complaint, but may also rely on all documents adopted by reference in the complaint, documents attached to the complaint, or facts that may be judicially noticed. *See* Fed. R. Civ. P. 10(c); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007); *Hall v. Bellmon*, 935 F.2d 1106, 1112 (10th Cir. 1991). Published administrative rules and regulations are appropriate for judicial notice. *See, e.g.*, *City of Wichita, Kan. v. U.S. Gypsum Co*, 72 F.3d 1491, 1496 (10th Cir. 1996) (allowing OSHA regulations to be judicially noticed as "a social fact with evidential consequences").

In addition to challenging the legal sufficiency of Williams' claims, the Prison Officials also assert the defense of qualified immunity to the due process and retaliation claims. Qualified immunity is particularly suited to motions to dismiss. It "is 'an immunity from suit rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial' [and was designed] to ensure that 'insubstantial claims' against government officials will be resolved prior to discovery." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); *Anderson v. Creighton*, 483 U.S. 635, 640 n.2 (1987) (further citations and quotations omitted)). Two elements exist in the qualified immunity

analysis—first, whether, under the facts alleged by the plaintiff, the government officials violated a constitutional right, and second, whether the right at issue was "clearly established" at the time of the defendant's alleged misconduct. *Id.* (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Courts "should have the discretion to decide whether that procedure is worthwhile in particular cases," and thus courts have the discretion to decide whether a right is "clearly established" while not addressing whether the conduct actually violated the constitution. *Id.* at 236. This is particularly the case when qualified immunity is asserted at the pleading stage. *Id.* at 237–39.

## LEGAL ARGUMENT

Williams lodges four separate legal claims against the State Defendants.[3]  Three are related to his claimed right to interest on his Trust Account. Williams asserts that by failing to follow the Utah Procurement Code and/or not maintaining interest bearing accounts, the Department has violated his Fourteenth Amendment right to due process, his Fifth Amendment right to be free from takings of private property without just compensation, and state and federal antitrust acts. His fourth claim (labeled Count III in his Complaint) alleges retaliation in violation of the First and Fourteenth Amendments. None of these claims states a plausible claim.

### I.    Williams' Due Process Count Fails to State a Claim.[4]

---

[3] Williams does not differentiate which claims are brought against which defendants. Many claims cannot be brought against the UDOC, as part of the State, or against the individuals. Those arguments will be dealt with on each claim.

[4] UDOC, and the Prison Officials sued in their official capacities, are not "persons" subject to suit pursuant to § 1983 and retain their Eleventh Amendment immunity from suit. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002). Thus, the State Defendants treat Williams' due process claims as against the Prison Officials in their individual capacity.

Williams first alleges that by holding inmate funds in accounts without interest, Williams' due process rights have been violated.  This claim is barred by the statute of limitations.  Furthermore, neither federal nor Utah law requires such interest.  And, at a minimum, the Prison Officials are entitled to qualified immunity, because the law was not clearly established that any interest was required.

### A.  The Due Process Claim Is Barred by the Statute of Limitations.

Complaints under 42 U.S.C. § 1983 have a statute of limitations equal to the "personal-injury statute of the state in which the federal district court sits." *Mondragon v. Thompson*, 519 F.3d 1078, 1082 (10th Cir. 2008).  Utah's personal-injury statute of limitations is four years. Utah Code § 78B-2-306(3); *Fratus v. DeLand*, 49 F.3d 673, 675 (10th Cir. 1995) (recognizing that Utah's four-year, catch-all statute of limitations applies to § 1983 actions).  Federal law determines when a cause of action accrues and when the statute runs.  *Mondragon*, 519 F.3d at 1082.  Actions under § 1983 normally accrue on the date of the constitutional violation.  *See Wallace v. Kato*, 549 U.S. 384, 388 (2007).  The claims accrue when the facts supporting the cause of action "are or should be apparent."  *Fratus*, 49 F.3d at 675 (citations and quotations omitted).

Williams's complaint in this case was filed on May 10, 2013, though Williams dated it April 8, 2013.  (Compl. at 1).  In this case, Williams complains that contracts to administer the trust funds entered into between Zions Bank and the Department on January 1, 1995 and July 1, 2001 were illegal.  (Compl. 4D–4E.)  These contracts are clearly outside the four-year statute of limitations.  Next, Williams argues that the negotiations process that occurred in 2006, resulting in a "gentlemen's agreement" culminating in January 2007, violated his due process rights as

well.  (Compl. 4E–4F, 4C.)  These events also occurred more than five years before Williams filed his Complaint, and outside the statute of limitations.

Williams cannot likewise rely on the continuation of the contract to keep his claim alive. The "continuing violations" theory, which permits a plaintiff to avoid the statute of limitations when a defendant acted pursuant to a pattern, policy, or practice of constitutional violations, does not apply to § 1983 lawsuits.  *See Mercer-Smith v. N.M. Children, Youth & Fam. Dep't*, No. 10-2053, 416 F. App'x 704, 713, 2011 WL 971132, at *7 (10th Cir. 2011) (ord & j. not selected for publication) ("[T]he doctrine of continuing violations does not apply to § 1983 claims."); *Hunt v. Bennett*, 17 F.3d 1263, 1265 (10th Cir. 1994) (recognizing that the Tenth Circuit had not held whether the doctrine applied to § 1983 claims); *Brock v. Herbert*, No. 10-4148, 2011 WL 3154230, at *3 n.5 (10th Cir. July 21, 2011) (ord. & j. not selected for publication) (noting that "it appears we have never specifically held the continuing violation theory applies to claims brought under § 1983").   And even if it does, if the "alleged injures are the continuing effects of a 'discrete act,' … the natural result of the allegedly unconstitutional … order," then the original act begins the statute of limitations running, and the "continuing effects" to not act to toll the statute or begin a new period.  *Loard v. Sorenson*, No. 13-4141, 2014 WL 1364678, at * 3 (10th Cir. April 8, 2014) (ord. & j. not selected for publication). The critical events—the negotiation and execution of contracts between the Department and Zions Bank—occurred before April 2009.  They fall outside the statute of limitations, and anything afterward is merely a "continuing effect[]" of that discrete act.  *Id.*  Williams's due process claims should be dismissed for being outside the statute of limitations.

*B.  Williams Has No Property Right in an Interest-Bearing Inmate Account.*

Williams alleges that he has been deprived of his Fourteenth Amendment due process rights because "Utah law requires ITFA Funds to be placed in an interest-bearing account with Plaintiffs receiving said interest.  Zions has not paid the Plaintiffs interest on ITFA Funds," (Compl. at 4A) and "UDC provides no procedure before or after depriving Plaintiffs of ITFA earned interest" (*Id.* at 4C).  Williams has not stated a due process claim.

The Fourteenth Amendment prohibits states from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).  Its procedural protections are "a safeguard of the security of interests that a person has already acquired in specific benefits." *Bd. of Regents v. Roth*, 408 U.S. 564, 576 (1972).

Determining whether the government has violated an individual's right to due process requires the Court to answer two questions: "(1) did the individual possess a protected interest such that the due process protections were applicable; and, if so, then (2) was the individual afforded an appropriate level of process [?]" *Farthing v. City of Shawnee*, 39 F.3d 1131, 1135 (10th Cir. 1994).  The Supreme Court defines 'property' in the context of the Fourteenth Amendment's Due Process Clause as a 'legitimate claim of entitlement' to some benefit." *Hyde Park Co. v. Santa Fe City Council*, 226 F.3d 1207, 1210 (10th Cir. 2000) (quoting *Roth*, 408 U.S. at 577).  These claims of entitlement generally "arise from independent sources such as state statutes, local ordinances, established rules, or mutually explicit understandings." *Dickeson v. Quarberg*, 844 F.2d 1435, 1437 (10th Cir. 1988).

4

The due process clause itself does not provide an inmate with a property right to accrued interest in his trust account. *Petrick v. Fields*, No. 96-6076, 103 F.3d 145, 1996 WL 699706, at * 1 (10th Cir. Dec. 6, 1996) (table op. not selected for publication).   Williams asserts that Utah Code § 61-13-23 does provide such a property right.  That section states, in relevant part:

> The department may require each offender, while in the custody of the department or while on probation or parole, to place funds received or earned by him from any source into an account administered by the department or into a joint account with the department at a federally insured financial institution.
> …
> (2) If the funds are placed in a joint account at a federally insured financial institution:
>> (a) any interest accrues to the benefit of the offender account; and
>> (b) the department may require that the signatures of both the offender and a departmental representative be submitted to the financial institution to withdraw funds from the account.
> (3) If the funds are placed in an account administered by the department, the department may by rule designate a certain portion of the offender's funds as interest-bearing savings, and another portion as noninterest-bearing to be used for day-to-day expenses.

Utah Code § 64-13-23.   Williams is wrong for two reasons.

First, subsection (2) provides that "any interest accrues to the benefit offender account." *Id.* The plain language of the section does not require that the inmate be provided interest. Rather it just provides that *if* the account accrues interest, it must be deposited in the inmate account.  As pleaded by Williams, the Inmate Account at Zions bank does not provide interest. (Compl. at 4L, 4C).  Williams alleges that "interest was paid," (Compl. at 4C) but does not allege that interest was paid to the account owner (UDOC).  Rather, Williams alleges that there is "constructive interest" created because Zions bank manages the money and invests it in marketable securities. (*Id.* at 4C).

"Interest is compensation paid for the use of money."  *Western Plains Serv. Corp. v. Ponderosa Dev. Corp.*, 769 F.2d 654, 657 (10th Cir. 1985).[5] The fact that Zions Bank may have used the money entrusted to it to invest and make a profit itself does not mean there was "interest" on the account.  And our own practical experience recognizes that a bank may allow us to deposit money with it, which it will use to invest and generate profit.  But our account will still be a 0% interest account.

Second, the plain language of the statute requires interest only when there is a "joint account at a federally insured financial institution." Utah Code § 64-13-23(2).  Under the Utah Probate Code, a "joint account" is one "payable on request to one or more of two or more parties whether or not mention is made of any right of survivorship." Utah Code § 75-6-101(4).  Even if the Legislature did not intend such a restrictive definition of "joint account" in Utah Code § 64-13-23, at a minimum, the term would mean an account which names both the inmate and UDOC.  But Williams has not pleaded that his name is on the Zions bank account—rather, he calls the contract the "Inmate Trust Fund Account,"  which had hundreds of thousands of dollars at one point (Compl. at 3D, 4C).  The individual accounts are, in fact, managed by UDOC.  Therefore, under the plain language of the statute, subsection (2) would not apply to the Trust Account.

This case is different from the discrete situations where courts have held inmates have a right to accrued interest in their trust account.  For example, in *Tellis v. Godinez*, the Ninth Circuit held inmates had such a property right based on a Nevada statute which said "The interest

---

[5] Even Wikipedia recognizes the same definition:  "Interest is a fee paid by a borrower of assets to the owner as form of compensation for the use of the assets.  It is most commonly the price paid for the use of borrowed money, or money earned by deposit funds."  "Interest," Wikipedia, http://en.wikipedia.org/wiki/Interest (last edited May 12, 2014) (citing Arthur Sullivan & Steven Sheffrin, *Economics: Principles in Action* (2003)).

and income on the money earned in the fund, after deducting any applicable charges, must be credited to the fund." *Tellis v. Godinez*, 5 F.3d 1314, 1316 (9th Cir. 1993) (quoting Nev. Rev. Stat. § 209.241).  In that case, (a) the statue required that "the interest and income … must be credited to the fund," instead of recognizing that "any" interest accruing to the benefit of the "offender's account,"  (b) there *was* interest provided to the prison, (c) rather than crediting the interest to accounts, the public officials withdrew it and used it "for the welfare and benefit of all offenders," *id.* at 1317.  In this case, there is no inmate "joint account," there is no "interest" (only investment income made by Zions), and thus there can be no property interest. Accordingly, the Prison Officials are entitled to dismissal of the claim.

### C.  The Prison Officials Are Entitled to Qualified Immunity.

Public officials are entitled to qualified immunity when an asserted due process right is based on a state statute, and the statute does not clearly grant that right.  *Greene v. Barrett*, 174 F.3d 1136, 1142–43 (10th Cir. 1999).   In *Greene*, a deputy sheriff sued his boss, asserting that he was demoted without notice and a hearing, as required by Wyoming law. *Id.* at 1139. However, the demotion was part of an administrative reorganization prompted by an efficiency study conducted by a consulting firm.  *Id.*  Though the Tenth Circuit determined that the demotion for administrative reasons did not qualify as an exception to the Wyoming statute prohibiting demotions except for cause and after hearing, the court nonetheless granted qualified immunity to the sheriff.  *Id.* at 1143.  It reasoned that, because the statute in regards to administrative demotions could be interpreted in "at least three ways," any of the three was an "acceptable interpretation," and no "clearly established weight of authority from other courts" had previously interpreted the statute at the time the employment action was taken, the sheriff's

7

deputy had not demonstrated any "clearly established weight of authority" to overcome qualified immunity.  *Id.*

In this case, even if the Court credits Plaintiffs' interpretation of the language "any interest" in the statute to mean that interest is *required*, there are at least two other reasonable interpretations of the statute:  (1) "joint account at a federally insured financial institution" means an account with the inmate's and the prison's name jointly owning the account.  Utah Code § 64–13–23(2).  The funds in the Inmate Trust Account are not held in separate inmate accounts; rather, Zions Bank has one fund that the prison manages for each inmate separately.  Thus, subsection (2) of Utah Code §64-13-23 does not apply.  (2) "Any interest" means that if the account pays interest to the account *holder*, it must accrue to the benefit of the inmate.  Williams admits that the account is not interest-bearing, so there is no requirement that the interest be provided to the inmate.  At a minimum, the Prison Officials are entitled to qualified immunity on Williams' due process claim.

Furthermore, the Tenth Circuit has noted that *Sandin v. Connor*, 515 U.S. 472 has affected the continuing viability of the basic rule that an inmate has *any* property interest in his prison trust account.  Because *Sandin* "shift[ed] the focus of the inquiry [applicable to prisoner due process claims] from the language of the regulation to whether the punishment 'imposes atypical and significant hardships on the inmate in relation to the ordinary incidents of prison life,'" previous court precedent on inmate trust accounts is "no longer good law and hence, not 'clearly established.'"  *Clark v. Wilson*, 625 F.3d 686, 691 (10th Cir. 2010) (further citations omitted).  Though *Clark* relates to the seizure of contraband in an inmate account, it does stand for the broader proposition that there is no "clearly established" law that inmates have a property

interest in their trust accounts at all, much less any property right to future interest payments.  *Id.* Because Williams has no clearly established right, the Prison Officials are entitled to dismissal with prejudice.

## II.     Williams' Takings Count Fails to State a Claim.[6]

Next, Williams attempts to recast his due process argument as a violation of the Takings Clause of the Fifth Amendment.  (Compl. 4A & 4C.)   Such a claim requires proof of three elements: (1) the existence of private property in which they had an interest; (2) governmental taking of that property for a public purpose; and (3) an entitlement to just compensation. *Ruckelshaus v. Monsanto Co.,* 467 U.S. 986, 1000-01 (1984); *Pennsylvania Central Transp. Co. v. City of New York,* 438 U.S. 104, 124-25 (1978).  Plaintiff has not, and cannot, alleged facts to create a plausible claim under the first or second elements, and thus the claim should be dismissed.

### A.   No Private Property Has Been Taken.

"A taking compensable under the Fifth Amendment inherently requires the existence of 'private property.'"  *Skip Kirchdorfer, Inc. v. United States*, 6 F.3d 1573, 1580 (Fed. Cir. 1993). Williams never had any interest—nothing was taken from him.  *See, e.g.*, *DSI Corp. v. United States*, 655 F.2d 1072, 1074 (Ct. Cl. 1981) ("When government 'takes' property, it exercises its rights as sovereign to acquire property from the rightful owner for the public good.").  Williams cannot meet the threshold element of a takings claim.

---

[6] Individual state employees cannot be sued for a taking. *See Monell v. Department of Social Services of the City of New York,* 436 U.S. 658, 687 (1978) (stating that the suit should be against "the government unit that had the benefit of the property taken."). Williams' takings claim may only be asserted against the government unit that was involved in the regulatory action, here, UDOC.

   B.  *No Property Has Been Taken "For a Public Purpose."*

Further, even if there was some property taken, it was not taken for a "public purpose."

U.S. Const. amend. V; *see also Bennis v. Michigan*, 516 U.S. 442, 452 (1996) ("The government

may not be required to compensate an owner for property which it has already lawfully acquired

under the exercise of governmental authority other than the power of eminent domain.").  "[S]o

long as the government's exercise of authority was pursuant to some power other than eminent

domain, then the plaintiff has failed to state a claim for compensation under the Fifth

Amendment." *AmeriSource Corp. v. United States*, 525 F.3d 1149 (Fed. Cir. 2008).  Here, the

contract is enacted not for a public purpose, but as part of the functioning of the prison system.

Regardless of whether the Court believes the inmate trust account was legitimate, the interest has

not been taken for a "public purpose," and the claim should be dismissed.

**III.    Williams' Antitrust Count Fails to State a Claim.**

A significant portion of Williams' complaint is related to "Antitrust violations" (Compl.

at 4C–M).  Though Williams recounts many facts related to the negotiation of the IFTA contract

between UDOC and Zions Bank, UDOC's decision to grant the contract to Zions rather than

continuing through a competitive bidding process, and Williams' subsequent complaints to state

and federal officials about the lack of an interest-bearing account, none of his facts demonstrates

a plausible antitrust complaint.  Besides its untimeliness, Williams' complaint is not one the

antitrust laws were designed to remedy, and the State, and its officers, are immune from antitrust

liability.[7]

---

[7] The State Defendants incorporate by reference the arguments made by Zions Bank Defendants
in their Motion to Dismiss on Williams' antitrust claims.

*A.  The Antitrust Claim Is Barred by the Statute of Limitations.*

As with Williams' due process claims, an antitrust claim must be commenced within four years after the cause of action has accrued.  15 U.S.C. § 15b.  An antitrust cause of action accrues "when a defendant commits an act that injures a plaintiff's business."  *Zenith Radio Corp. v. Hazeltine Research, Inc.*  401 U.S. 321, 339 (1971).  If there is a "new and independent act that is not merely a reaffirmation of a previous act" causing "new and accumulating injury on the plaintiff," the "continuing conspiracy" exception may restart the statute of limitations.  *Kaw Valley Elec. Coop. Co. v. Kan. Elec. Power Coop.*, 872 F.2d 931, 933 (10th Cir. 1989) (citations and quotations omitted.  Though Williams attempts to allege many facts evidencing a "continuing conspiracy," none of those acts caused new injury.  Rather, Williams was "injured" (if he was) when the agreements were made that Zions Bank would continue to manage the Trust Account in 2007.  This exceeds the statute of limitations, and thus Williams' complaint is barred.

*B.  Williams Does Not State an Antitrust Injury.*

Section 1 of the Sherman Act states that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade of commerce among the several States, or with foreign nations" is illegal 29 15 U.S.C. § 1.  Section 2 of the Act makes it a felony to "monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce ... shall be deemed guilty of a felony...." And Section 4 of the Clayton Act provides treble damages and attorney fees to "any

11

person … injured in his business or property by reason of anything forbidden in the antitrust laws . . . ." 15 U.S.C. § 15(a).[8]

However, to state a claim, a plaintiff must demonstrate both an "antitrust injury," and "antitrust standing."  *See Elliott Indus. L.P. v. BP Am. Prod. Co.*, 407 F.3d 1091, 1124–25 (10th Cir. 2005).

> "An antitrust injury is an injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendant's acts unlawful." The Sherman Act was designed to protect market participants from anticompetitive behavior in the marketplace. Thus, "[t]he antitrust injury requirement ensures that a plaintiff can recover only if the loss stems from a competition-reducing aspect or effect of the defendant's behavior."

*Id.* (quoting *Reazin v. Blue Cross & Blue Shield of Kan., Inc.*, 899 F.2d 951, 962 n. 15 (10th Cir.1990) (further quotation omitted); *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 530 (1983); *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 344 (1990)).

It is clear that Williams does not allege that he has suffered an antitrust injury.  He alleges that the Department agreed to manage its accounts with Zions Bank instead of with other banks, which may have provided interest to the account holders but also would have charged fees. (Compl. at 4F.)  This is not a "conspiracy in restraint of trade."  It was a decision to make a contract with another party for the provision of services.  While Williams might not have liked the contract that the DOC chose, it is not a violation of the antitrust laws.  *See Tal v. Hogan*, 453

---

[8] A "monopoly" claim requires a plaintiff to show that an entity acquires or maintains monopoly power in such a way as to preclude others from engaging in fair competition.  *TV Comm'ns Network v. Turner Network Television, Inc.*, 964 F.2d 1022, 1024–25 (10th Cir. 1992).  Plaintiffs have no facts to show anything other than UDOC has chosen a provider for their bank accounts. There is no market to monopolize.

F.3d 1244, 1253 (10th Cir. 2006) (concluding no antitrust standing by the owner of a condemned property for allegedly fraudulent condemnation proceedings).

What Williams is actually challenging is the propriety of the contract under the Utah Procurement Code.   But there is no citizen's right of action for violation of the Procurement Code.  A prospective bidder may protest the award of a contract, *see* Utah Code § 63G-6a-1602 (2013),[9] appeal that decision, *id.* § 63G-6a-1702, and seek review of an adverse decision by filing an appeal with the Utah Court of Appeals, *id.* § 63G-6a-1802.  A contractor may sue in district court for a cause of action arising under an existing contract with the state.  *Id.* § 63G-6a-1802(5).[10]  Criminal penalties and forfeiture of employment may be lodged against a state employee who violates certain provisions of the code.  *See* Utah Code § 63G-6a-2305, -2306.[11] But an individual who is not either a contractor or prospective bidder has no right of action.  And there is no reason to imply one.  *See Buckner v. Kennard*, 2004 UT 78, ¶ 40, 99 P.3d 842, 853; *Miller v. Weaver,* 2003 UT 12, ¶ 20, 66 P.3d 592.

The State Defendants are not conspiring for restraint of trade; nor are they monopolizing a market.  Williams does not plead antitrust injury or antitrust standing.  His claim is fatally flawed.

---

[9] These same rights were granted in the pre-2013 Procurement Code.  *See* Utah Code §§ 63G-6-801, -804, -811, -814 (2012)

[10] *Cf.* Utah Code § 63G-6-815 (2012).

[11] Before 2013, the only criminal penalty was for accepting bribes for a bid.  Utah Code § 63G-6-1001 (2012).

### C.   The State, and Its Officials, Are Immune from Antitrust Liability. [12]

Even if, somehow, Williams' Complaint states a plausible claim for relief under the antitrust laws, the State, and its officials, are immune from antitrust liability.  The Sherman Act contains no suggestion of a purpose to restrain state action.  *Parker v. Brown*, 317 U.S. 341, 351 (1943).  *Parker* is based on "principles of federalism and state sovereignty," and holds that the Sherman Act does not prohibit "the anticompetitive actions of a state acting through its legislature."  *Hoover v. Ronwin*, 466 U.S. 558, 567 (1984).   Other courts have extended that rationale to executive branch agencies, when operating "within its constitutional and statutory authority."  *Charley's Taxi Radio Dispatch Corp. v. SIDA of Hawaii, Inc.*, 810 F.2d 869, 875 (9th Cir. 1987) (citations and quotations omitted).

In *Charley's Taxi*, the Ninth Circuit held that Hawaii and the Department of Transportation was immune from antitrust liability for awarding an exclusive contract to airport pickups to one group of taxi drivers, to the exclusion of other companies.  *Id.* at 872.  Because the DOT had the authority to maintain the airport and establish contracts for the provision of services at the airport, it was immunized from antitrust liability even if it chose an exclusive airport taxi service.  *Id.* at 875.

Similarly, Prison Officials are authorized to create and manage inmate accounts.  Utah Code § 64-13-23.  Though Williams alleges that the procurement of the contract for that account may have not been in compliance with the procurement code (though it was), that does not affect

---

[12] The Department, as a subdivision of the State, is immune from damage for antitrust liability. *Charley's Taxi*, 810 F.2d at 874.

the Prison Officials' authority to make the contract in the first place.   Therefore, the State Defendants are immune from antitrust liability.

>     D.   *State Law Provides No Remedy.*

Williams states that the Prison Officials acted "in violation of the Sherman, Clayton, and Utah Antitrust Acts."   Williams fails to cite a specific Utah statute other than the Procurement Code to support his state law claim, but, as described above the Procurement Code does not provide a private right of action for someone in Williams's position.   To the extent plaintiff does rely on Utah antitrust laws, *see* Utah Code § 76-10-919 (2007), Utah Code § 76-10-3109 (2013), the State Defendants are immune from suit, because the State has not waived antitrust liability, because the Prison Officials cannot be personally sued for actions taken as part of their duties, and because the activities are related to the management of Williams, an incarcerated person. Utah Code §§ 63G-7-201(1); -202(3)(a), -301(5)(j).   Furthermore, because Williams' action accrued more than four years before he filed, it is barred.   Utah Code § 76-10-926 (2007), Utah Code § 76-10-3117 (2013);   Finally, because the state antitrust laws are to be interpreted in harmony with federal antitrust laws, Williams state claim fails for the same reasons his federal claim fails.   Utah Code § 76-10-926 (2007), Utah Code § 76-10-3118 (2013); *Boisjoly v. Morton Thiokol, Inc.*, 706 F. Supp. 795, 805 (D. Utah 1988) (dismissing state antitrust claim because "[t]his court sees no reason to rule differently with respect to the state claim").   Therefore, plaintiff's perfunctory reference to state antitrust laws cannot save his claim, and it should be dismissed.

**IV.    Williams' Retaliation Count Fails to State a Claim.**[13]

Finally, Williams alleges a "conspiracy" or retaliation on his redress of grievances/freedom of speech (Compl. at 4M, 4S).   "Prison officials may not retaliate against or harass an inmate because of the inmate's exercise of his right of access to the courts." *Smith v. Maschner*, 899 F.2d 940, 940 (10th Cir. 1990).  To state a claim, an inmate must plead plausible set of facts showing "(1) he was engaged in constitutionally protected activity, (2) the government's actions caused him injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the government's actions were substantially motivated as a response to his constitutionally protected conduct." *Howards v. McLaughlin*, 634 F.3d 1131, 1144 (quoting *Nielander v. Bd. of Cnty. Comm'rs*, 582 F.3d 1155, 1165 (10th Cir.2009) (further citations and quotations omitted)).

The first allegations raised by Williams are related to his complaint with the Office of the Comptroller of Currency, the OCC.  (Compl. at 4M–4S.)  The OCC has jurisdiction over banks, federal savings associations, or thrifts.  *See* Office of the Comptroller of Currency, "Who Regulates My Bank," http://www.helpwithmybank.gov/national-banks/national-banks.html (last visited June 16, 2014).  Williams pleaded that the OCC took no action against Zions Bank following his complaint.  (Compl. at 4R.)

---

[13] Similarly, Williams' retaliation claims may only be brought against Prison Officials in their individual capacities.  *See* note 4, *supra*.  Furthermore, Williams must plead a plausible claim against each Prison Official he believes is liable.  In other words, he is required to show an "affirmative link" between the constitutional deprivation and each individuals' personal participation in the violation.  *See Keith v. Koerner*, 707 F.3d 1185, 1188 (10th Cir. 2013).  To the extent the Court believes that Williams' retaliation claims may state a claim, it should require him to replead the complaint to specifically allege which defendants engaged in retaliatory conduct.

Williams provides no proof that this type of complaint—complaining to a federal regulatory agency that Zions must pay interest—is "constitutionally protected activity" protected by the constitution.  Furthermore, Williams has not shown that his complaint was even plausible. If Williams had no right to engage in the activity, or if his alleged protest is frivolous, a plaintiff cannot meet the first element.  *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 352–53 (1996) (holding that prisoners' constitutional rights to access the courts are not violated if the claim interfered with is frivolous).

The allegations regarding the alleged free speech complaint, while difficult to understand, do not appear to state a claim.  Williams appears to argue that because he requested records and grieved the lack of records provided by Prison Officials, he was searched and some of his work product was seized.  He then alleges because he grieved the seizure, he was recommended to get a three-year pardon rehearing if he completed an 18-month therapy program, 17 months of which he completed.  (Compl. at 4S–4T.)  Williams has not alleged that he, or any "ordinary inmate" would be chilled by any conduct (in fact, he has continued to progress on in his claims about the inmate trust accounts).  *Lewis v. Jacks*, 486 F.3d 1025, 1028 (8th Cir. 2007) (articulating the test as an "inmate of ordinary firmness").  Nor has he alleged anything but conclusory allegations that the retaliatory purpose is the "decisive factor" in the adverse action.  *Strope v. McKune*, No. 09-3283, 382 F. App'x 705, 2010 WL 23332079 (10th Cir. June 11, 2010) (ord. & j. not selected for publication.); *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998).  Accordingly, the retaliation count fails to state a plausible claim, and must also be dismissed.

## CONCLUSION

For the reasons stated, the State Defendants respectfully request that the Court grant their motion and dismiss Williams' Complaint with prejudice.[14]

DATED this 16th day of June, 2014.

UTAH ATTORNEY GENERAL'S OFFICE


/s/ Kyle J. Kaiser
KYLE J. KAISER
Assistant Utah Attorney General
Attorneys for State Defendants

---

[14] Williams has been appointed counsel, though no counsel has yet entered an appearance, and Williams has been ordered not to file any further pleadings. *See* Order at ¶ 4 (Doc. 32). The State Defendants do not object to an extension of the time to respond to their motion, up to and including twenty-eight days following their entry of appearance on behalf of Williams.

## <u>CERTIFICATE OF SERVICE</u>

I certify that on June 16, 2014, I electronically filed the foregoing **CORRECTIONS**

**DEFENDANTS' MOTION TO DISMISS AND MEMORANDUM IN SUPPORT**, using the

Court's CM/ECF system and I also certify that a true and correct copy of the foregoing was sent

by United States mail, postage prepaid, on June 17, 2014 to the following:


Reginald Williams, Inmate No. 4620
Utah State Prison
P.O. Box 250
Draper, UT 84020-0250
Pro Se


                                                           /s/ Cecilia Lesmes