IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| REGINALD WILLIAMS,<br><br>                  Plaintiff,<br><br>v.<br><br>UTAH DEP'T OF CORRS. et al.,<br><br>                  Defendants. | **MEMORANDUM DECISION AND ORDER**<br>• **GRANTING MOTION TO DISMISS CERTAIN DEFENDANTS AND**<br>• **DENYING MOTION TO DISMISS REMAINING DEFENDANTS**<br><br>Case No. 2:13-cv-319-DN<br><br>District Judge David Nuffer |

Plaintiff Reginald Williams (Plaintiff) filed a Complaint[1] alleging that, the Inmate Trust Fund Account (ITFA) administered by the Utah Department of Corrections (UDOC) must pay interest earned on inmate funds to inmates during imprisonment. Plaintiff named multiple defendants, categorized into groups: Zions Defendants and UDOC Defendants.[2]

On June 14, 2014, the Zions Defendants filed a Motion and Memorandum to Dismiss All Claims Against the Zions Defendants.[3] The Motion to Dismiss was granted.[4]

UDOC Defendants now seek dismissal, for failure to state a claim, on all claims against them.[5] These claims include: (1)takings and due process violations for withholding interest on ITFA funds; (2) antitrust violations to establish a monopoly, and (3) retaliation for raising these

---

[1] Complaint, Docket No. 6, filed May 10, 2013.

[2] *Id.*

[3] Docket No. 40, filed June 16, 2014.

[4] Memorandum Decision & Order Dismissing Zions Bank Defendants with Prejudice, Docket No. 58, filed June 19, 2017.

[5] State Defendants' Motion to Dismiss and Memorandum in Support (Motion to Dismiss), Docket No. 42, filed June 16, 2014.

issues.[6] For the reasons stated in this order, Defendants' Motion to Dismiss[7] is **GRANTED** as to all claims, except the retaliation claim and its related conspiracy allegations, and as to all Defendants, except M. Anderson, Turley, Bussio, Gardner, and Casper (Remaining Defendants).

In Plaintiff's Memorandum in Opposition to the State Defendants' Motion to Dismiss (Plaintiff's Opposition), Plaintiff states he "does not oppose [UDOC] Defendants' motion insofar as it relates to his antitrust claims."[8] Therefore the antitrust claims are considered withdrawn and the other three claims of due-process and takings violations as to misappropriated earnings of monies in the ITFA and retaliation for raising the trust-fund issues will be considered.

STANDARDS FOR REVIEW ................................................................................................ 3

DUE PROCESS AND TAKINGS CLAIMS.................................................................................. 4

RETALIATION CLAIM ............................................................................................................. 7

ORDER ................................................................................................................................ 10

---

[6] Complaint at 3A and 3D.

[7] Motion to Dismiss.

[8] Docket No. 50 at p. 7, filed January 6, 2017. Plaintiff's response was drafted by his court-appointed counsel, Wesley Fox.

## STANDARDS FOR REVIEW

In evaluating the propriety of dismissing claims for failure to state a claim upon which relief may be granted, all well-pleaded factual assertions as taken as true and regarded in a light most advantageous to the plaintiff.[9] Dismissal is appropriate when, viewing those facts as true, the plaintiff has not posed a "plausible" right to relief.[10] "The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief."[11] When a civil rights complaint contains "bare assertions," involving "nothing more than a 'formulaic recitation of the elements' of a constitutional . . . claim," the Court considers those assertions "conclusory and not entitled to" an assumption of truth.[12] In other words, "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[13]

Pro se pleadings are construed "'liberally,' applying a less stringent standard than is applicable to pleadings filed by lawyers. Th[e] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf."[14] In the Tenth Circuit reasoned it can reasonably read the pleadings "to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence

---

[9] *Ridge at Red Hawk L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

[10] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)*; Robbins v. Oklahoma*, 519 F.3d 1242, 1247-48 (10th Cir. 2008).

[11] *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 556).

[12] *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1951 (2009) (quoting *Twombly*, 550 U.S. at 554-55).

[13] *Red Hawk*, 493 F.3d at 1177 (italics in original).

[14] *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citations omitted).

construction, or his unfamiliarity with pleading requirements."[15] Still, it is not "the proper function of the district court to assume the role of advocate for the pro se litigant."[16]

## DUE PROCESS AND TAKINGS CLAIMS

Plaintiff asserts that Utah Code Ann. § 64-13-23 (Utah Statute) regarding ITFAs requires "that inmate funds will accrue interest whether in a joint account or in a an account administered by the department of corrections."[17] Plaintiff further alleges "because the State Defendants do not credit the ITFA accounts with monies earned on the funds," his Fourteenth Amendment right to due process and his Fifth Amendment right to be free from takins of private property without just compensation were violated.[18]

In Plaintiff's Opposition, he correctly points out that other circuits have noted, "it is clear that inmates have a property interest in funds held in prison accounts."[19] However, Plaintiff is arguing that the Utah Statute mandates UDOC Defendants place inmate funds into an interest bearing account and that interest earned should be paid to inmates.[20]

The Fifth and Fourteenth Amendments' guarantees "'apply only when a constitutionally protected liberty or property interest is at stake.'"[21] "To establish such a protected property

---

[15] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[16] *Id.*; *see also Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir. 1998) (citing *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989) (per curiam)).

[17] Plaintiff's Opposition at p.3.

[18] *Id.* at 3, 5.

[19] *Id.* at p. 2, citing *Reynolds v. Wagner*, 128 F.3d 166, 179 (3d Cir. 1997)

[20] *Id.* at 3.

[21] *Petrick v. Fields*, No. 96-6076, 1996 U.S. App. LEXIS 31338, at *4 (10th Cir. Dec. 6, 1996) (unpublished) (quoting *Tellis v. Godinez*, 5 F.3d 1314, 1316 (9th Cir. 1993) (citing *Board of Regents v. Roth*, 408 U.S. 564, 569 (1972)).

4

interest, [Plaintiff] must have a 'legitimate claim of entitlement' to interest earned on funds in his accounts."[22] *Roth* goes on to say that

> property interests . . . are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law--rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.[23]

Thus, it must be determined whether Utah Statute or another independent source entitles Plaintiff to earn and receive interest on his prison account funds.[24]

The statute[25] upon which Plaintiff bases the entitlement upon is under the title, "Offender's income and finances." It states in relevant part: "*If* the funds are placed in a joint account at a federally insured financial institution: *any* interest accrues to the benefit of the offender account."[26] The statute goes on to say, "*If* the funds are placed in an account administered by the department, the department *may* by rule designate a certain portion of the offender's funds as interest-bearing savings, and another portion as noninterest-bearing to be used for day-to-day expenses."[27]

---

[22] *Roth*, 408 U.S. at 577.

[23] *Id*.

[24] *Petrick*, 1996 U.S. App. LEXIS 31338, at * 4-5 ("[B]ecause neither Oklahoma state law nor any other 'independent source' provide [Plaintiff] a constitutionally protected property interest in interest earned on funds in his draw or mandatory savings accounts, his claim must fail."); *see, e.g., Givens v. Alabama Dep't of Corr.,* 381 F.3d 1064 (11th Cir. 2004) (determining Alabama law created no property interest in inmate's account interest).

[25] Utah Code Ann. § 64-13-23 (2017).

[26] *Id*. § 64-13-23(2)(a) (2017) (emphasis added).

[27] Id. § 64-13-23(3) (emphasis added).

5

Tenets of statutory construction counsel, if possible, to construe the statute "in such fashion that every word has some operative effect."[28] Further, the "statute is to be read as a whole, since the meaning of statutory language, plain or not, depends on context."[29]

Giving each word in the Utah Statute operative effect, the overall words and tone are deferential, not commanding. These words separately and in context have the connotation of yielding to UDOC's judgment on how to handle the money.

The Utah Statute[30] certainly gives the UDOC Defendants the *authority* to choose whether to put the funds in an interest bearing account, but it does not require it.[31] In fact the funds were placed in a non-interest bearing account.[32] Because the UDOC Defendants put inmate funds in a non-interest-bearing account, there is no interest for Plaintiff to claim. Where there is no property interest, there can be no taking of property, nor can there be a property deprivation without due process.[33]

Plaintiff also alleges that any monies earned on the funds, interest or otherwise, if not credited to the ITFA accounts violates Plaintiff's due process rights.[34] Even if Zions Bank used

---

[28] *Tellis,* 5 F.3d at 1316.

[29] *King v. St. Vincent's Hosp.*, 112 S. Ct. 570,574 (1991) (citations omitted).

[30] *Id*.

[31] In Plaintiff's Opposition at p 3, he cites *Schneider v. Cal. Dept. of Corrections*, 151 F.3d 1194, 1200 (9th Cir. 1998) in which the Ninth Circuit held that prisoners have a constitutionally protected property right in interest on prison trust funds even in the face of contrary state statute. However, in *Schneider* there was a question as to whether any interest accrued on the funds. The Ninth Circuit remanded the case to the district court to permit discovery to determine whether or not any interest actually accrued on the prisoner funds. In this case, the UDOC Defendants placed prisoner funds in an account where there was no interest, only investment income made by Zions Bank.

[32] Motion to Dismiss at 7. The UDOC Defendants placed funds in an account where "there is no 'interest' (only investment income made by Zions)."

[33] *Petrick*, 1996 U.S. App. LEXIS at *7.

[34] Plaintiff Opposition at 3. Plaintiff cites to *Tellis v. Godinez*, 5 F.3d 1314, 1316 (9th Cir. 1993) ("The earnings of a fund are incidents of ownership of the fund itself and are property just as the fund itself is property.")(quoting *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 164 (1980). The Nevada statute at issue in *Tellis*, is different than the Utah Statute in that the Nevada statute specifically provides that interest and income earned on

the funds to make a profit for itself does not mean there was "interest" on the account or that the UDOC Defendants violated the Utah Statute. As UDOC Defendants point out in practicality "a bank may allow us to deposit money with it, which it will use to invest and generate profit. But our account will still be a 0% interest account."[35] For the reasons stated above, UDOC Defendants are not liable to Plaintiff regarding ITFA interest—constructive or otherwise. These claims are dismissed.

## RETALIATION CLAIM

Under this claim, Plaintiff asserts that, because he was pursuing this very litigation, certain UDOC Defendants unconstitutionally conspired and retaliated against him through such targeted activities as confiscating his legal materials.[36]

"Prison officials cannot harass or retaliate against inmates for the inmate's exercise of his First Amendment right to access the courts."[37]

> [T]o establish a First Amendment retaliation claim, the following elements must be shown: (1) that the plaintiff was engaged in a constitutionally protected activity; (2) defendant's actions caused injury to plaintiff that would chill a person of ordinary firmness from continuing to engage in the activity; and (3) the adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct. *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1203-04 (10th Cir. 2007). Given that "an inmate is not inoculated from the normal conditions of confinement experienced by convicted felons . . . merely because he has engaged in protected activity[,] . . . a plaintiff must prove that but for the retaliatory motive, the incidents to which he refers, including the disciplinary action, would not have taken place."

---

money in the fund must be credited to the fund. More importantly in *Tellis*, there was interest provided to the prison and officials withdrew the interest instead of crediting the interest to the account.

[35] *Id*. at 6.

[36] Complaint at 4T.

[37] *Smith v. Maschner*, 899 F.2d 940, 947-48 (10th Cir. 1990).

*Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998) (internal quotation marks omitted) (quoting Smith, 899 F.2d at 949-50).[38]

In their Motion to Dismiss, Defendants argue that Plaintiff has not provided enough specificity on this claim to state a claim upon which relief may be granted.[39] The Court disagrees.

Through several pages of his Complaint, Plaintiff sets forth his efforts to find evidentiary support for his allegations about the way trust-fund accounts were managed. And then he specifies certain defendants that allegedly retaliated toward his efforts by seizing Plaintiff's sensitive legal materials (supporting his litigation in this very case) "in violation of UDC policy."[40] He further describes some of their alleged retaliation efforts:

> Bussio and Gardner recommended the BOP give Williams three year rehearing if Williams successfully complete a therapy program. Williams completed 17-months of the 18-month program at the time of the recommendation. Said recommendation served no legitimate penological interest other than to retaliate for exercising speech rights.
> But for the retaliatory intent of Bussio and Gardner, Williams would have received a favorable recommendation before the BOP. Bussio and Gardner submitted the adverse BOP recommendation to intimidate and chill Williams' First Amendment rights to (1) seek redress from the OCC as described above; (2) seek redress from Utah State Courts regarding ITFA records as described above; and (3) file grievances regarding the ITFA and seizure of Williams' privileged legal materials.[41]

Thus, the Complaint states a claim upon which relief may be granted regarding Plaintiff's retaliation claim and the related conspiracy allegations. Therefore Defendants' Motion to Dismiss as to these claims and correlating defendants is denied.

---

[38] *Thornton v. GEO Group, Inc*., No. CV 14-893 MCA/CG, 2016 U.S. Dist. LEXIS 140710, at *30 (D.N.M. May 16, 2016).

[39] Motion to Dismiss at 17.

[40] Complaint at 4N.

[41] *Id.* at 4N-4V.

The remaining defendants in this case are named in the retaliation and related conspiracy claims: M. Anderson, Turley, Bussio, Gardner, and Casper (Remaining Defendants). These defendants must move beyond their answers and motion to dismiss to the next stage of the litigation. Every other defendant is dismissed with prejudice and is no longer part of this case.

The Court now orders the Remaining Defendants to file a *Martinez* report[42] and dispositive motion as follows:

(A) If Defendants wish to assert the affirmative defense of Plaintiff's failure to exhaust administrative remedies in a grievance process, Defendants must,

    (i)    within 90 days, prepare and file a *Martinez* report limited to the exhaustion issue; and,

    (ii)    within 120 days, file a separate summary judgment motion, with a supporting memorandum.

(B) If Defendants choose not to rely on the defense of failure to exhaust and wish to pierce the allegations of the Complaint, Defendants must,

    (i) within 90 days, prepare and file a *Martinez* report addressing the substance of the complaint; and,

---

[42] *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978) (approving district court's practice of ordering prison administration to prepare report to be included in pleadings in cases when prisoner has filed suit alleging constitutional violation against institution officials).

    In *Gee v. Estes*, 829 F.2d 1005 (10th Cir. 1987), the Tenth Circuit explained the nature and function of a *Martinez* report, saying:
> Under the *Martinez* procedure, the district judge or a United States magistrate [judge] to whom the matter has been referred will direct prison officials to respond in writing to the various allegations, supporting their response by affidavits and copies of internal disciplinary rules and reports. The purpose of the *Martinez* report is to ascertain whether there is a factual as well as a legal basis for the prisoner's claims. This, of course, will allow the court to dig beneath the conclusional allegations. These reports have proved useful to determine whether the case is so devoid of merit as to warrant dismissal without trial. *Id.* at 1007.

(ii) within 120 days, file a separate summary judgment motion, with a supporting memorandum.

(C) If Defendants wish to seek relief otherwise contemplated under the procedural rules (e.g., requesting an evidentiary hearing), Defendants must file an appropriate motion within 90 days of filing their answer.

The parties shall take note that local rules governing civil cases are in effect. The Approved Amendments to the Local Rules and Updated Rules are posted on the Court's website. This Court will order the parties to refile summary-judgment motions which do not follow the standards.[43]

Plaintiff is notified that Plaintiff may, within 30 days of its filing, respond to a *Martinez* report if desired. Plaintiff is further notified that Plaintiff must, within 30 days of its filing, respond to the summary-judgment motion. Plaintiff is finally notified that, when Defendants move for summary judgment, Plaintiff may not rest upon the mere allegations in the complaint. Instead, as required by Federal Rule of Civil Procedure 56(e), to survive a motion for summary judgment Plaintiff must allege specific facts, admissible in evidence, showing that there is a genuine issue remaining for trial.

No time extensions for either party will be granted between now and the time when the *Martinez* report is produced and the summary-judgment motion and related responses and objections are filed.

## ORDER

Accordingly, **IT IS HEREBY ORDERED** that:

---

[43] *See, e.g.,* D. Utah Civ. R. 5-2 (Filing Cases and Documents under Court Seal); *id.* 7-1 (Motions and Memoranda); *Id.* 26-2 (Standard Protective Order and Stays of Depositions); *id.* 56-1 (Summary Judgment: Motions and Supporting Memoranda).

(1) Defendants' Motion to Dismiss is **GRANTED** as to all claims, except the retaliation claim and its related conspiracy allegations, and as to all Defendants, except M. Anderson, Turley, Bussio, Gardner, and Casper (Remaining Defendants).

(1) Remaining Defendants must within 90 days file a *Martinez* report.

(2) When served with a *Martinez* report, Plaintiff may submit a response within 30 days of the report's filing date.

(3) Remaining Defendants must within 120 days file a summary-judgment motion.

(4) When served with a summary-judgment motion, Plaintiff must submit a response within 30 days of the motion's filing date.

(5) If requesting relief otherwise contemplated under the procedural rules, Remaining Defendants must do so within 90 days.

(6) The parties are on notice that no extensions of time will be granted during the period between now until when the *Martinez* report is produced and the summary-judgment motion and related responses and objections are filed.

DATED this 29th day of September, 2017.

BY THE COURT:

_____
CHIEF JUDGE DAVID NUFFER
United States District Court