IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF UTAH

| | |
|---|---|
| REGINALD WILLIAMS,<br><br>Plaintiff,<br><br>v.<br><br>M. ANDERSON et al.<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING REMAINING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 2:13-CV-319 DN<br><br>Judge David Nuffer |

Orders of June 19, 2017, (Docket No. 58), and September 29, 2017, (Docket No. 61), disposed of all other claims and defendants in this case except State of Utah defendants M. Anderson (Assistant Attorney General (AAG)), Turley (Department of Corrections (UDOC)), Deputy Warden Bussio (UDOC), Captain Gardner (UDOC), and Grievance Coordinator Casper (UDOC). The two remaining civil-rights claims are conspiracy to retaliate and retaliation. *See* 42 U.S.C.S. § 1983 (2018). These claims allege that because Defendants knew that Plaintiff was gathering materials for this lawsuit, they conspired to retaliate and retaliated by confiscating his legal materials, recommending a three-year rehearing date to the Utah Board of Pardons and Parole (BOP), and refusing a grievance about the latter.

Defendants filed a *Martinez* report, (Docket No. 67), including evidentiary documentation: (1) declarations of Defendants Anderson, Bussio, Casper, and Gardner, amongst other relevant Utah State Prison (USP) staff; (2) UDOC grievance and inmate-property policies; (3) relevant letters; (4) Plaintiff's April 2011 Rehearing Report and March 2011 Initial Contact Report. Based upon their *Martinez* report, Defendants move for summary judgment, asserting

qualified immunity. (Docket No. 71.) Plaintiff responds, attaching one item of evidence, Plaintiff's declaration. (Docket No. 72.) Plaintiff's response also asks for discovery to seek more evidence to support his claims. This order grants summary judgment for Defendants.

## SUMMARY-JUDGMENT STANDARD

A court shall grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support factual assertions by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." *Id*. at 56(c)(1). Summary judgment's purpose "is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

The movant has the "initial burden to demonstrate an absence of evidence to support an essential element of the non-movant's case." *Johnson v. City of Bountiful*, 996 F. Supp. 1100, 1102 (D. Utah 1998). Once movant meets this burden, "the burden then shifts to the non-movant to make a showing sufficient to establish that there is a genuine issue of material fact regarding the existence of that element." *Id*. To do so, the non-movant must "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of a trial from which a rational trier of fact could find for the nonmovant." *Adler v. Wal-Mart Stores*, 144 F.3d 664, 671 (10th Cir. 1999) (citation omitted). In ruling on a summary-judgment motion, this Court must "examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000).

Plaintiff was notified that, in response to a summary-judgment motion, "Plaintiff cannot rest upon the mere allegations in the complaint. Instead . . . Plaintiff must allege specific facts, admissible in evidence, showing that there is a genuine issue remaining for trial." (Docket No. 13, at 5-6.)

**QUALIFIED IMMUNITY**

Defendants' assertion of qualified immunity modifies the summary-judgment review. Asserting qualified immunity, a state employee creates a rebuttable presumption that she is immune from the plaintiff's § 1983 claims. *See Medina v. Cram*, 252 F.3d 1124, 1129 (10th Cir. 2001). And rather than "focus[ing] on the existence of genuine disputes of material fact," the court must "'determine whether plaintiff's factual allegations are sufficiently grounded in the record such that they may permissibly comprise the universe of facts that will serve as the foundation for answering the *legal* questions before the court.'" *Spencer v. Abbott*, No. 16-4009, 2017 U.S. App. LEXIS 24668, at *10 n.6 (10th Cir. Dec. 5, 2017) (unpublished) (emphasis in original) (quoting *Cox v. Glanz*, 800 F.3d 1231, 1243 (10th Cir. 2015)).

The qualified immunity analysis has two parts: first, whether, under the facts alleged by the plaintiff, the government officials violated a constitutional right; and second, "whether the right at issue was 'clearly established' at the time of the defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). If the plaintiff fails to satisfy either element of his burden, the court must grant the defendant qualified immunity. *See Medina*, 252 F.3d at 1128.

If the material facts are not disputed, the question of immunity "is a legal one for the court to decide." *Gomes v. Wood*, 451 F.3d 1122, 1136 (10th Cir. 2006). Such is the case here.

**UNDISPUTED MATERIAL FACTS**

• Plaintiff's crimes for which he was incarcerated at the relevant time (and remains incarcerated) are Aggravated Sexual Assault, three counts, with a ten-to-life sentence; Aggravated Robbery, with a five-to-life sentence; and Habitual Criminal, with a five-to-life sentence. (Docket No. 74-2 BOP Rehearing Order, dated September 30, 2011.)

• During the relevant time period, Plaintiff was a USP inmate. (Docket No. 6, at 3 Complaint.) USP is operated by UDOC. (*Id*. at 2-3.)

• For at least seven years, Plaintiff has been researching the propriety of UDOC's operation of the Inmate Trust Fund Account (ITFA). His efforts have entailed requests and appeals under Utah's open records law (GRAMA), complaining to the Office of the Comptroller of the Currency about ITFA's establishment and management, and filing this action. (Docket No. 72, at 4 Plaintiff's Opp. to Defendants' summary-judgment motion (specifying "Not disputed").)

• In January 2011, Defendant Anderson, an AAG representing UDOC, provided GRAMA-requested documents to Plaintiff. (*Id*. (specifying "Not disputed).)

• A few weeks later, Defendant Anderson determined that certain documents that he had given to Plaintiff should have been classified, "PROTECTED," under GRAMA. (*Id*. (specifying "Not disputed"); Docket No. 67-9 (April 5, 2011 Defendant Anderson letter to Plaintiff).)

• Defendant Anderson talked about this with UDOC administrators Williams and Defendant Turley. Because GRAMA protected records were classified as contraband under USP policy, the decision was made to retrieve the documents from Plaintiff by taking his "legal pouch." (Docket No. 72, at 4-5 Plaintiff's Opp. To Defendants' summary-judgment motion (specifying "Not disputed"); Docket No. 67-9 April 5, 2011 Defendant Anderson letter to Plaintiff.)

• An inmate's legal pouches may contain (1) "Legal - Public" materials--e.g., "case copies, court rules, discovery responses (but not books) which are necessary to process the case": and (2) "Legal - Privileged" materials--e.g., "attorney-client correspondence and other non-public material which could compromise the inmate's legal position if disclosed." (Docket No. 67-10, at 6 UDOC Policy Inmate Property.)

• Legal - Privileged "pouches may be inspected, but contents shall not be read [by UDOC employees]"; Legal - Public "pouches shall be subject to normal inspection rules and have no privilege against reading." (*Id*. at 6.)

• "Specific justification for confiscating the legal pouch shall be evidence or suspicious items that may be considered contraband . . . ." (*Id*. at 7.)
• The UDOC policy about handling a confiscated pouch is as follows:

> 1. If the legal pouch is confiscated it shall be listed on a Confiscation Form by the staff member completing the search and/or property inventory.
> 2. The legal pouch and its contents shall be immediately sealed in an evidence bag by the staff member completing the search.
> 3. The staff member who confiscated the legal pouch shall complete an Incident Report outlining reasons for confiscation.
> 4. The report and legal pouch shall be secured in an area designated by the Deputy Warden.
> 5. The following working day the Deputy Warden/designee shall pick up the legal pouch and reports at a designated area.
> 6. The Deputy Warden/designee shall forward the evidence bag, incident reports, and other pertinent information identifying the reason for the confiscation to the Warden's office.
> 7. The Warden's office shall inspect contents of the evidence bag and make a determination if contents shall be returned to the inmate.
> 8. If it is determined that the legal pouch has been improperly seized from an inmate, the improperly seized items should be returned within five working days of a determination that the items can be legitimately possessed by the inmate.
> 9. If items were seized properly, the Warden's office shall send legal pouches, Incident Reports, and other pertinent information to the Contract Attorneys for review.
> 10. The Contract Attorneys shall inspect the legal pouches, and the inmate's legal material should be returned to the inmate within 14 calendar days.

(*Id*. at 9-10.)

• On March 30, 2011, at Defendant Bussio's request, Defendant Gardner took two correctional officers to Plaintiff's dorm and watched while the officers collected Plaintiff's legal pouches, after which Gardner put them in Bussio's secured office until Bussio moved them to Warden Bigelow's office. (Docket No. 67-2, at ¶¶ 4-5 Bussio Decl.; Docket No. 67-4, at ¶¶ 4-5, 7 Gardner Decl.; Docket No. 67-12 UDOC Incident Report.)

• During the relevant time, Wayne Freestone was a "contract attorney" for UDOC. Contract attorneys are independent lawyers hired to consult and support inmate legal efforts. Also,"Contract Attorneys are tasked with the job of sorting the 'Legal-Privileged' documents from the 'Legal-Public' when DOC employees need to search or otherwise review an inmate's legal files." (Docket No. 67-5, at ¶¶ 2, 4 Freestone Decl; Docket No. 72, at 6 Plaintiff's Opp. to Defendants' summary-judgment motion (specifying "Not disputed").))

• On April 1, 2011, Plaintiff's legal pouches were brought to Freestone for review. Freestone followed his standard practice of turning over any legal-public documents to UDOC official for

review and returned any privileged ones back to Plaintiff. (*Id*. at ¶ 6; Docket No. 67-9 April 5, 2011 Defendant Anderson letter to Plaintiff.)

• On April 4, 2011, Defendant Anderson went to Warden Bigelow's office to sort through the legal pouches containing documents contract attorneys had identified as "legal-public." (Docket No. 67-1, at ¶¶ 17-18 Anderson Decl.; Docket No. 72, at 7 Plaintiff's Opp. to Defendants' summary-judgment motion (specifying "Not disputed").)

• With Warden Bigelow looking on, Defendant Anderson spent less than thirty minutes sifting through the pouches' contents "only to locate and retrieve the documents [he] had inadvertently disclosed to [Plaintiff]." (Docket No. 67-1, at ¶¶ 19-20 Anderson Decl.; Docket No. 72, at 7 Plaintiff's Opp. to Defendants' summary-judgment motion (specifying "Not disputed").)

• Knowing that the contraband he sought was at least partially typewritten, Defendant Anderson did not read or skim most of the material and quickly disregarded content of anything entirely handwritten. (Docket No. 67-1, at ¶¶ 23-24; Docket No. 72, at 7 Plaintiff's Opp. to Defendants' summary-judgment motion (specifying "Not disputed").)

• Defendant Anderson removed only the contraband documents. (Docket No. 67-1, at ¶ 25; Docket No. 72, at 7 Plaintiff's Opp. to Defendants' summary-judgment motion (specifying "Not disputed").) Defendant Anderson did not take the pouches out of the warden's presence, nor did he "review [Plaintiff's] privileged legal material, discuss the content of [Plaintiff's] pouches with anyone or rely on the content of the pouches in researching whether [UDOC] violated the Procurement Code in its dealings with [dismissed Defendant Zions Bank]." (Docket No. 72, at 7 Plaintiff's Opp. to Defendants' summary-judgment motion (specifying "Not disputed").)

• Defendant Anderson gave written notice to Plaintiff of what had been removed from his legal pouch and what was being re-provided to him with redactions. (Docket No. 67-1, at ¶ 27 Anderson Decl.; Docket No. 67-9 April 5, 2011 Defendant Anderson letter to Plaintiff; Docket No. 72, at 7 Plaintiff's Opp. to Defendants' summary-judgment motion (specifying "Not disputed").)

• On April 5, 2011, with Captain DeGuilio as a witness, Defendant Bussio returned to Plaintiff his legal files, minus the contraband documents. (Docket No. 67-2, at ¶¶ 7-8 Bussio Decl.; Docket No. 72, at 7 Plaintiff's Opp. to Defendants' summary-judgment motion (specifying "Not disputed").) No specific chain-of-custody document has been provided to Plaintiff or the Court. (Docket No. 72, at 6 Plaintiff's Opp. to Defendants' summary-judgment motion.)

• At the relevant time, one of Defendant Gardner's duties was to write rehearing reports (RRs) for when inmates had BOP hearings. He delegated this duty to a caseworker. These reports contain sentencing history, disciplinary records, synopses of program participation, community support information, and treatment and action recommendations, since BOP's last hearing. (Docket No. 67-4, at ¶ 10 Gardner Decl.; *id.* No. 67-6, at ¶ 4 Johnson Decl.)

- Often RRs include Offender Management Review team (OMR) recommendations. OMR is a group of corrections officers who meet, including the individual inmate's caseworker, with an inmate at least yearly to ensure the inmate is safe, appropriately housed, meeting needs, and adequately progressing toward institutional goals, among other things. (Docket No. 67-4, at ¶ 11 Gardner Decl.)

- SOTP separately reports to BOP when an inmate has completed his program. Plaintiff had not yet completed the SOTP in which he was enrolled in July 2010. His RR included a three-year rehearing recommendation. (*Id*. at ¶ 12; Docket No. 72-1, at ¶ 6 Williams Decl.)

- On April 13, 2011, as one of his regular duties, Defendant Bussio ministerially reviewed (i.e., checked for editing errors, correct inmate name and number, and basic information) the case manager's RR about Plaintiff and forwarded it through his secretary to Warden Bigelow. (*Id*. at ¶¶ 9-10.) Defendant Bussio "had no other role in preparing [the RR.]" Docket No. 72, at 9 Plaintiff's Opp. to Defendants' summary-judgment motion (specifying "Not disputed").)

- Plaintiff's RR had information about his crimes; sentences; institutional disciplinary history, noting positive and negative "c-notes"; education, noting Plaintiff is a high school and college graduate; current employment in the prison print shop, with a rating of "Good"; current enrollment in SOTP and parenting life skill class; completed courses, all successfully completed; fairly consistent employment, from May 2005 through April 2011; lack of involvement with substance abuse; "satisfactory" assessment of his active SOTP participation (i.e., good attendance, well-done "values assignment," "good understanding of his values," the statement, "He is a well-balanced individual mentally, physically, and emotionally," and the summary that he "is doing well"); and, prospects for family and community support upon release (Plaintiff hoped to live with his mother in Detroit and listed "no other support system"). (Docket No. 70 Plaintiff's Rehearing Report, dated April 13, 2011.)

- On April 19, 2011, BOP received Plaintiff's RR (dated April 13, 2011) from Defendants Gardner and Bussio. (Docket No. 67-6, at ¶ 7 Johnson Decl.)

- A separate mental health record also provided to BOP stated that Plaintiff had completed about one year of SOTP but still had six months left. (*Id*.)

- About two weeks before an inmate's rehearing date, the RR is given to the inmate. The inmate may then submit any counter-evidence, concerns or objections to the RR to BOP. (*Id.* at ¶¶ 4-6.) Plaintiff got a copy of the RR on September 7, 2011, "along with a separate mental health report which noted that he had six months of the [SOTP] to complete. At the hearing with [BOP, Plaintiff] did not raise any concerns that the [RR] was false or that the recommendations were made in retaliation for any protected activity." (Docket No. 72, at 10 Plaintiff's Opp. to Defendants' summary-judgment motion (specifying "Not disputed").)

- "At the time of his 2011 rehearing, [Plaintiff] had not yet completed [SOTP]." (Docket No. 67-6, at ¶ 9 Johnson Decl.)

7

• BOP did not follow the RR's recommendation for a three-year rehearing but instead ordered Plaintiff to "expire" his life sentence. The Rehearing Order noted, "This decision is subject to review and modification by the Board of Pardons at any time until actual release from custody." (*Id*. at ¶ 11; Docket No. 74-2 BOP Rehearing Order, dated September 30, 2011.)

• Aggravating factors cited by BOP in its September 2011 rehearing decision: (1) "Offender's Traits During the Offense," "Motive (intentional, premeditated vs. impulsive, reactionary"; (2) "Victim Characteristics," (a) "Extent of injury (physical, emotional, financial, social," (b) "Relatively vulnerable victim vs. aggressive or provoking victim"; (3) "Offender's Present Characteristics," "Degree of meaningful support system." (Docket No. 74-4 BOP's Rationale for Decision on 9-22-2011 for Rehearing.)

• Mitigating factors cited by BOP in its September 2011 rehearing decision: (1) "Offender's Present Characteristics," "Denial or minimization vs. complete acceptance of responsibility" and (2) "Programming (effort to enroll, nature of programming)." (*Id*.)

• In September 2011, Plaintiff filed a grievance about the rehearing recommendation. (Docket No. 6, at 6 Complaint) Defendant Casper was the Inmate Grievance Coordinator who processed the grievance and rejected it because it was vague and appeared to challenge a BOP decision. BOP decisions are not covered by the grievance policy. (Docket No. 67-3, at ¶¶ 2-3, 8, 10 Casper Decl.)

• Defendant Casper did not discuss the rejected grievance with Defendants Bussio or Gardner. (Docket No. 72, at 11 Plaintiff's Opp. to Defendants' summary-judgment motion (specifying "Not disputed").)

## LEGAL ANALYSIS

Plaintiff argues that his advocacy for the alleged deprivation of prisoner civil rights regarding inmate trust fund management made him a target for retaliation by UDOC personnel, through Defendants. He asserts that Defendants

> punished [him] for the exercise of his First Amendment rights, and of his related right to access the courts, by obstructing his legal advocacy--seizing his legal materials and reviewing them without adequate basis and without proper precautions; signaling their displeasure to [BOP] through a negative Rehearing Recommendation that he was to be punished; and denying him access to the normal grievance process in relation to those same actions.

([Docket No. 72, at 2](#) Mem. in Opp. to the State Defendants' Motion for Summary Judgment.)

Plaintiff says his "evidence is, of necessity, almost entirely circumstantial." (*Id*. at 3.) Plaintiff's evidence is primarily the inference from the timing of the review of Plaintiff's legal materials and of the "negative" Rehearing Recommendation and of the denial of his grievance on these matters. He essentially argues that Defendants' actions all happened within a tight timeframe of weeks in which Defendants became aware of his litigation preparation; and, therefore, their actions must have been caused by Defendants' awareness of his preparations.

It is true that, often, conspiracy and retaliation must be proven with circumstantial evidence. *See Snell v. Tunnell*, 920 F.2d 673, 702 ((10th Cir. 1990) ("'[R]arely . . . will there be direct evidence of an express agreement among all the conspirators to conspire.") (quoting *Bell v. City of Milwaukee*, 746 F.2d 1205, 1260 (7th Cir. 1984))); *Smith v. Maschner*, 899 F.2d 940, 949 (10th Cir. 1990) ("Precisely because the ultimate fact of retaliation turns on defendants' state of mind, it is particularly difficult to establish by direct evidence.").

However, even when drawing "all justifiable inferences" in Plaintiff's favor as required, "a fair-minded jury" could not "return a verdict for the plaintiff on the evidence presented." *Smith*, 899 F.2d at 949.

**A. Defendant Turley**

The facts alleged in a complaint must clearly show what each individual defendant did to violate a plaintiff's civil rights. *See Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976) (stating personal participation defendant is essential allegation in civil-rights action). This means that Plaintiff must "'make clear exactly *who* is alleged to have done *what* to *whom*.'" *Stone v. Albert*, No. 08-2222, slip op. at 4 (10th Cir. July 20, 2009) (unpublished) (emphasis in original)

9

(quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008)). Plaintiff may not succeed in a claim based solely on supervisory liability. *See Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996) (stating supervisory status alone is insufficient to support liability under § 1983).

Under these guidelines, Plaintiff has done nothing to affirmatively link Defendant Turley to his claims, but has instead identified him merely as a bystander or supervisor--and has not alleged any actionable facts about him. Plaintiff's claims against this defendant therefore may not survive further. And Defendant Turley is thus dismissed.

### B. Remaining Defendants M. Anderson, Bussio, Gardner, and Casper

Plaintiff argues Defendants Anderson, Bussio, Gardner, and Casper conspired to retaliate against him for preparing this lawsuit. Using the prescribed qualified-immunity analysis, this Court must first determine under the undisputed material facts whether these government defendants violated a constitutional right. The supported factual allegations are those recited above, titled, "Undisputed Material Facts."

#### 1. Conspiracy

"[T]o recover under a § 1983 conspiracy theory, a plaintiff must plead and prove not only a conspiracy, but also an actual deprivation of rights; pleading and proof of one without the other [is] insufficient." *Dixon v. Lawton*, 898 F.2d 1443, 1449 (10th Cir. 1990). "This is because the essence of a § 1983 claim is the deprivation of the right rather than the conspiracy." *Id*. At the very least a § 1983 conspiracy action requires "a combination of two or more persons acting in concert and an allegation of a meeting of the minds, an agreement among the defendants, or a general conspiratorial objective." *Brooks v. Gaenzle*, 614 F.3d 1213, 1227-28 (10th Cir. 2010).

With Defendant Turley dismissed, the remaining defendants are again AAG M. Anderson, Deputy Warden Bussio, Captain Gardner, and Grievance Coordinator Casper. The related material facts that Plaintiff marked, "Not disputed," are as follows: Defendant Anderson "did not . . . discuss the content of [Plaintiff's] pouches with anyone"; Defendant Bussio had no substantive role in preparing Plaintiff's RR; and Defendant Casper "had no conversations with Larry Bussio or Paul Gardner about the grievance."

Allegations of conspiracy are virtually nonexistent based alone on these facts undisputed by Plaintiff. But also, there is no suggestion in the evidence whatsoever that Defendant Anderson interacted or had reason to interact with any other remaining defendant. And he did not talk to anyone at all about Plaintiff's pouch contents. There is also nothing to indicate that he was involved in the RR recommendation or grievance rejection.

Next, Defendant Bussio had no real voice in the recommendations in the RR. Nor did he discuss the grievance with Defendant Casper. This leaves him toconspire about confiscating legal material; however, no facts show that he instigated the confiscation. The facts instead show that Defendant Anderson was the one who brought Plaintiff's contraband possession to UDOC officials' (including Defendant Bussio's) attention to remedy the matter. The only allegations against Bussio here indicate that he participated in the execution of the plan to confiscate the contraband.

Further, Defendant Casper "had no conversations with Larry Bussio or Paul Gardner about the grievance." There is no evidence that Defendant Casper had any reason to know about Plaintiff's lawsuit preparation or the contraband confiscation. And it is undisputed that she did not talk to the other defendants about the grievance. That leaves no chance for conspiracy.

Finally, Defendant Gardner is the only one left and the one about whom no direct undisputed evidence exists as to his communications with the other defendants. However, there would be no one left amongst the defendants with whom he could have conspired.

Next, this order examines Plaintiff's conspiracy claim by reviewing whether there was retaliation, which is "the deprivation of the right." *Dixon*, 898 F.2d at 1449. Without successful assertion of retaliation, there is no conspiracy claim to consider.

### 2. Retaliation

Plaintiff contends that Defendants violated his First Amendment rights by retaliating against him for preparing this federal civil-rights action. He asserts that their retaliation took the form of seizing his legal pouches, recommending a three-year rehearing date in his RR, and denying a related grievance. Defendants argue, based on their evidence, that (1) the confiscation of Plaintiff's legal pouches was for the sole purpose of extracting contraband documents; (2) the three-year rehearing recommendation was primarily based on Plaintiff's still-uncompleted SOTP; and, (3) the grievance rejection was routine under existing policy.

#### a. Elements of Retaliation Cause of Action

"It is well-settled that '[p]rison officials may not retaliate against or harass an inmate because of the inmate's exercise of his right of access to the courts.'" *Gee v. Pacheco*, 627 F.3d 1178, 1189 (10th Cir. 2010) (quoting *Smith*, 899 F.2d at 947). To show retaliation, Plaintiff must prove three elements: (1) Plaintiff was involved in "constitutionally protected activity"; (2) Defendants' behavior injured Plaintiff in a way that "would chill a person of ordinary firmness from continuing to engage in that activity"; and (3) Defendants' injurious behavior was

"substantially motivated" as a reaction to Plaintiff's constitutionally protected conduct. *Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007).

The Court assumes--for purposes of this Order only--that the first two elements are met. *See Ellis v. Franco*, No. CIV 15-0848, 2017 WL 3052503, at *8 (D.N.M. July 12, 2017) (report & recommendation). This order will next consider whether (based on the undisputed material facts) Defendants' behavior (i.e., seizing legal pouches, recommending a three-year rehearing date, and rejecting a grievance) was substantially motivated by their knowledge of Plaintiff preparing to bring this lawsuit.

### b. "But-For" Motivation

"[I]t is not the role of the federal judiciary to scrutinize and interfere with the daily operations of a state prison." *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998). Thus, "to satisfy the third prong of the First Amendment test, an inmate must allege specific facts showing that '*but for* the retaliatory motive, the incidents to which he refers . . . would not have taken place.'" *Banks v. Katzenmeyer*, 645 F. App'x 770, 772 (10th Cir. 2016) (emphasis added) (quoting *Peterson,* 149 F.3d at 1144 (internal quotation marks omitted)). This is a "heightened standard" that requires that Plaintiff must show "a triable issue not only that retaliation for [his preparation for this lawsuit] played a role in [confiscation of his legal pouches, three-year rehearing recommendation, and grievance rejection] but that such retaliation was the decisive factor." *Strope v. McKune*, 382 F. App'x 705, 710 (10th Cir. 2010) (unpublished); *see also Smith,* 899 F.2d at 949 (stating plaintiff must "prove that the actual motivating factor behind defendants' actions was retaliation for his prior or current litigation"); *Strope v. Cummings*, 381 F. App'x 878, 884 (10th Cir. 2010) (unpublished) ("Keeping in mind the rigorous burden placed

on Strope to show not only that a retaliatory motive may have played some role in his transfer but that such a motive was the strict but-for cause of his transfer, we conclude that he has failed to make the necessary showing on this element to defeat summary judgment, i.e., his evidence was 'merely colorable' at best and not 'significantly probative.'") (citations omitted). Therefore, it was critical to Plaintiff's avoidance of summary judgment that he provide evidence detracting from Defendants' alternative justifications for the confiscation, rehearing recommendation and grievance rejection. *See McKune*, 382 F. App'x at 710.

Still, Plaintiff presented no evidence to undermine Defendants' alternative justifications. *See id*. Instead, his "attribution of retaliatory motive is conjectural and conclusory." *Cummings*, 381 F. App'x at 883; *see also Banks*, 645 F. App'x at 774 n.2 ("A plaintiff's subjective beliefs about why the government took action, without facts to back up those beliefs, are not sufficient to create a genuine issue of fact concerning [a] First Amendment retaliation claim." (internal quotation marks and citation omitted) (alteration in original)); *Ellis*, 2017 U.S. Dist. LEXIS 108683, at *21 ("An inmate's mere speculation that actions taken by correctional officials were in retaliation for the exercise of his First Amendment rights cannot defeat summary judgment.") While he may very well have participated in the protected activity of preparing a lawsuit, that by itself does not provide the required nexus for his retaliation claim. *See id*. "If it did, litigious prisoners could claim retaliation over every perceived slight and resist summary judgment simply by pointing to their litigiousness." *Id*. Of course, Plaintiff was not inoculated from standard conditions of confinement simply because he was preparing a lawsuit. *See id*. The Tenth Circuit has "consistently held that temporal proximity between protected activity and a challenged prison action does not, in itself, demonstrate the causal nexus for a retaliation claim."

*Id*. While Plaintiff argues a time correlation, he does not show other circumstantial evidence that might strengthen his hand--e.g., other "coincidences," or patterns of behavior. *See Smith*, 899 F.2d at 949.

All that is left are Defendants' explanations that legal-pouch confiscation was based on need to remove contraband from Plaintiff's cell; the rehearing recommendation was based on Plaintiff's failure to finish SOTP before BOP hearing; and the grievance was rejected consistent with policy. *See id*. Even if Plaintiff firmly believes and is right that Defendants did not follow UDOC's procedures to the letter, isolated mistakes are not an actionable basis for a free speech claim. *See id*. Even if Plaintiff firmly believes that the timing of the confiscation and rehearing recommendation were closely tied together and could arouse suspicion that the events were correlated, "temporal proximity per se is insufficient to show that the stated explanation for a challenged action is pretextual." *Id.*; *see also Smith v. Drawbridge*, No. CIV-16-1135-HE, 2017 U.S. Dist. LEXIS 175923, at *27 (W.D. Okla. Sept. 8, 2017) (report & recommendation) (stating "'suspicious timing,' without more, is insufficient to support a reasonable inference that these actions" were taken because Plaintiff exercised constitutional rights). Defendants "have come forward with reasons for essentially every action taken against [Plaintiff]." *Northington v. Zavaras*, No. 99-1184, 2000 U.S. App. LEXIS 19113, at *10 (10th Cir. August 10, 2000) (unpublished).

Beyond this categorical treatment of Defendants, it strains reason to infer that each of these individual defendants retaliated on his or her own. First, the undisputed facts show that Defendant M. Anderson instigated the retrieval of the contraband documents from Plaintiff. The evidence shows that he originally provided those documents to Plaintiff, realized later that he

15

had made a mistake in doing so, and then activated a process to retrieve them. There is not even a hint of any other motive attributed to him. And no facts or inferences whatsoever connect him with any other activity.

Second, Defendants Bussio and Gardner were involved in the retrieval of the contraband documents and the production of the RR, but not the grievance rejection. It is undisputed that the contraband retrieval was not their idea and that Defendants Bussio did not substantively contribute to the RR. They were merely cogs, each carrying out his discrete function in the larger processes.

Even so, it does appear that Defendant Gardner had the authority to play a significant role in producing the RR, although he swears that he did nothing of the sort. Assuming he did--that still avails Plaintiff nothing. There is undisputed evidence that the decision to include the three-year rehearing recommendation was supported, at the least, by the fact that Plaintiff had not completed SOTP. While Plaintiff characterizes the RR as "negative," the actual language of the RR and its many complimentary comments do not reflect that tone--e.g., "He is a well-balanced individual mentally, physically, and emotionally." The RR was not used by Defendants as a signal to BOP to harshly punish Plaintiff.

Finally, the evidence extends no inkling that Defendant Casper knew of Plaintiff's lawsuit preparations. So, it does not follow that Defendant Casper denied Plaintiff's grievance to retaliate for those preparations. Moreover, as grievance coordinator for many years, Defendant Casper was consistently denying or rejecting prisoner grievances, a steady proportion of which were necessarily brought with a view to litigation. It simply is not logical to infer that she would single out one grievance to reject, as retaliation for an inmate preparing a lawsuit.

## CONCLUSION

Plaintiff's claims of conspiracy and retaliation fail due to his lack of evidence showing that, but-for a motive of retaliation regarding Plaintiff's exercise of his First Amendment rights, Defendants would not have seized his legal pouches, submitted a three-year rehearing recommendation, or rejected his grievance.

Because this order concludes that Defendants did not violate Plaintiff's constitutional right here, it will not address the second prong of the qualified-immunity analysis. *Medina*, 252 F.3d at 1128 ("If the plaintiff fails to satisfy either part of the two-part inquiry, the court must grant the defendant qualified immunity."). Defendants are granted qualified immunity.

## ORDER

IT IS ORDERED that, based on futility, Plaintiff's motion for discovery is DENIED. ([Docket No. 72](Docket No. 72).)

IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment is GRANTED. ([Docket No. 71](Docket No. 71).)

This action is DISMISSED.

DATED this 29th day of March, 2018.

BY THE COURT:

CHIEF JUDGE DAVID NUFFER
United States District Court